IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| ADAM MIYLER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:24-cv-4054 |
| | ) | |
| vs. | ) | |
| | ) | |
| BNSF RAILWAY CO. | ) | |
| | ) | JURY DEMANDED |
| Defendant. | ) | |

**COMPLAINT**

COMES NOW Plaintiff, Adam Miyler, by and through undersigned counsel, and for his causes of action against the Defendant, BNSF Railway Company, (hereinafter "BNSF" or "Defendant"), states the following:

**STATEMENT OF CASE**

1. Plaintiff Adam Miyler was an approximate **29-year employee** of BNSF from September 1994 until his termination on January 30, 2023. Plaintiff began suffering from a disability in September 2021 and received intermittent medical leave in May 2022 as a reasonable accommodation. BNSF terminated Plaintiff shortly after making complaints to the Department of Labor on how BNSF was handling and retaliating against him related to his medical leave. BNSF targeted and investigated Miyler for alleged rules violations while ignoring multiple other employees with similar offenses.

2. Plaintiff's termination was due to one or more of the following actions of Defendant:

1

(a) That Defendant interfered with Plaintiff's Family Medical Leave and/or retaliated against him for taking Family Medical Leave and/or for making complaints about his medical leave;

(b) That Defendant harassed, discriminated, disciplined, suspended and terminated Plaintiff due to his disability;

(c) That Defendant harassed, discriminated, disciplined, suspended and terminated Plaintiff in retaliation for utilizing reasonable accommodations for her disability;

(d) That Defendant harassed, discriminated, disciplined, suspended and terminated Plaintiff in failing to provide him with a reasonable accommodation;

(e) That Defendant harassed, discriminated, disciplined, suspended and terminated Plaintiff in retaliation for making complaints about discrimination in the workplace;

3. This is an action brought to remedy, inter alia, Defendant's violations of Plaintiff's civil rights pursuant to the American with Disabilities Act; the Illinois Human Rights Act of 1967; and/or the Family Medical Leave Act.

## THE PARTIES

4. Plaintiff, Adam Miyler, is a resident of Knox County, Illinois.

5. Plaintiff was an approximate 29 ½ year employee of BNSF.

6. BNSF is a foreign corporation with its principal place of business in Tarrant County, Texas.

## JURISDICTION AND VENUE

7. This Honorable Court has jurisdiction pursuant to 42 U.S.C. § 2000e-5 and 28 U.S.C. § 1331, 1343(4) and 1367.

8. Plaintiff timely filed a Charge of Discrimination on June 30, 2023.

9. Plaintiff requested and received a notice of right to sue from the Equal Employment Opportunity Commission (EEOC). (See Exhibit 1).

10. This matter is filed within 90 days of the receipt of Exhibit 1.

11. Plaintiff requested and received a notice of right to sue from the Illinois Department of Human Rights (IDHR).

12. This matter is filed within 90 days of the issuance of the notice from the IDHR.

13. The alleged unlawful practices complained of herein occurred with the counties of the State of Illinois comprising the Central District of Illinois, Rock Island Division.

14. Employment records with respect to Plaintiff's termination are kept within this district.

15. Plaintiff would have continued to work in Knox County, Illinois which is part of the Central District of Illinois, Rock Island Division, but for the wrongful and unlawful practices committed by Defendant.

16. Specifically, Plaintiff was working and expected to continue to work in the City of Galesburg, County of Knox, State of Illinois.

17. Plaintiff is a resident of Knox County, Illinois and therefore felt the effects of the discrimination in the Central District of Illinois, Rock Island Division.

18. As such, venue is proper in the Central District of Illinois, Rock Island Division.

19. Venue is proper pursuant to 28 U.S.C. 1391(b) as a substantial part of the events or omissions giving rise to this claim occurred in the counties comprising the Central District of Illinois, Rock Island Division.

20. Specifically, the alleged unlawful decisions were made by Defendant at its facilities located in Galesburg, Illinois.

**ALLEGATIONS COMMON TO ALL COUNTS**

**EMPLOYMENT HISTORY**

21. Miyler was hired in September 1994 as a Conductor Trainee.

22. Miyler was later promoted to Freight Conductor.

23. In 1997, Miyler was promoted to Locomotive Engineer.

24. Prior to September 2021, Miyler was a good employee.

**DISABILITY**

25. In September 2021, Miyler contracted Covid-19.

26. Miyler was 51 years old at the time.

27. After initially contracting Covid-19, Miyler continued to suffer from "long-Covid."

28. Miyler also has other medical issues including hypertension and diabetes.

29. Miyler had, among others, frequent headaches, occasional dizziness, congestion, fatigue, and loss of taste and smell.

30. Miyler's medical conditions are physiological conditions that are affecting one or more body systems including neurological, respiratory, cardiovascular, and/or circulatory systems.

31. His medical conditions substantially limited one or more life activities including, among others, his ability to work, concentrate, think, sleep, breathe, eat, taste and smell.

32. As a result of his conditions, Miyler would have flare ups that would require him to miss work from time to time.

33. As a result of his conditions, Miyler was required to have doctor's appointments to care for his conditions.

**REQUEST FOR ACCOMMODATION/FAMILY MEDICAL LEAVE**

34. Miyler missed work for approximately 14 days as a result of getting Covid-19.

35. BNSF attempted to discipline him for his attendance related to having Covid-19.

36. BNSF investigated him for missing work and Miyler prevailed.

37. In April 2022, Miyler requested medical leave as a reasonable accommodation.

38. On May 9, 2022, Miyler was approved for Family Medical Leave.

**UNIQUE ASPECTS OF RAILROAD LIFE**

39. BNSF runs its trains 24 hours a day, 365 days a year.

40. A train consists of one or more locomotive engines and a consist of one or more rail cars.

41. A train can be more than a mile long and can haul many different types of commodities and goods including hazardous, noxious, flammable, and/or highly dangerous chemicals.

42. Locomotive engineers operate the engine and "drive" the trains down the track.

43. The General Code of Operating Rules (GCOR) is a set of rules created by the railroad industry to comply with Federal Railroad Administration (FRA) regulations.

44. BNSF is one of over 300 railroads in the country that have adopted GCOR.

45. The very first section of GCOR discusses safety.

46. Section 1.1.1 is titled "Maintaining a Safe Course" providing "In case of doubt or uncertainty, take the safe course."

47. Section 1.1.2 is titled "Alert and Attentive" providing in part "…They must be alert and attentive wen performing their duties and plan their work to avoid injury."

48. Operating a train requires employees to be rested and able to concentrate on their

job activities.

49. Locomotive engineers must always be fully rested and alert and attentive at all times while at work.

50. The importance of this is that an employee operating a train who was not properly rested or able to concentrate could have catastrophic consequences including the injury or death of an employee, the injury or death of the public, and/or cause a train derailment that could blow up or poison whole towns.

51. If a railroad employee cannot be alert and attentive due to his or her medical issues, the choice is to utilize a FMLA day or come to work and risk severe injury or death.

52. Miyler works on the "extra board."

53. The extra board is essentially a list of employees who are "on-call."

54. Once Miyler is past his federally mandated rest period, he is subject to call whenever it is his turn on the list of locomotive engineers.

55. If Miyler "misses" a turn because of medical leave, another employee gets bumped up to take his turn on the list.

56. Intermittent medical leave is medical leave to cover not only medical appointments but also flare-ups that would interfere with someone's ability to work.

57. As a result, an employee could have a flare-up the morning of his/her shift that would keep the employee from being able to safely operate a train.

58. Railroads, including BNSF, detest intermittent Family Medical Leave because it affects their profits.

59. In BNSF's own words, "Unanticipated absences can cause logistical snarls, such as train delays and service disruptions that can ripple throughout the railroad nationwide."

**MIYLER'S FIRST COMPLAINTS OF DISCRIMINATION**

60. Miyler complained to BNSF about how they were calculating his FMLA leave.

61. BNSF refused to work with him to help him understand or change how they were calculating his FLMA leave.

62. Miyler reasonably believing BNSF was violating his rights under the FMLA contacted the Department of Labor in August or Early September 2022.

63. Miyler contacted BNSF's Employee Services in early September.

64. During this phone call, Miyler informed BNSF that he was contacting the Department of Labor to complain about BNSF's actions relating to his medical leave.

65. According to BNSF, this phone call was on September 9, 2022.

66. <u>Ten days later</u>, on September 19, BNSF notified Miyler that it was investigating him for his FMLA usage.

**RAILROAD TARGETING OF MIYLER**

67. When railroad management wants to discipline or get rid of an employee, it starts targeting that employee for various rules violations.

68. Railroad transportation crews generally consist of two people, a conductor and an engineer.

69. On December 5, 2022, BNSF notified Miyler that he was being investigated because he "tied up" (railroad term for "clocking out") later than his conductor on 6 occasions from September 25 through November 17.

70. There is no railroad rule against tying up later than your fellow crew member.

71. BNSF did not interview or investigate the conductors regarding whether they complied with the rules.

72. There are several reasons for a conductor to tie-up sooner.

73. These include being able to get called out again sooner to get an extra trip in, putting themselves in position to catch a higher paying job on their next turn, and/or giving them a better chance to work with a preferred co-worker.

74. Despite all of these reasons, no one other than Miyler was investigated for tie-up times.

75. BNSF maintains a list of employees who tie up later than their fellow crew members.

76. There is a list of 20 Galesburg employees who have substantially similar records of different tie-up times.

77. 13 of the 20 on this list had more occasions than Miyler and another 6 have the same amount.

78. Upon information and belief, none of these persons were disciplined let alone terminated because of the discrepancy in tie-up times.

**RAILROAD INVESTIGATIONS AND FAILURE TO ENGAGE IN INTERACTIVE PROCESS**

79. Miyler was notified on September 19, 2022 of alleged issues with his FMLA.

80. BNSF failed to engage in an interactive process with Miyler regarding his FMLA usage.

81. BNSF failed to engage in an interactive process to determine whether it could further accommodate Miyler's disabilities.

82. On January 10, 2023, BNSF held an investigation hearing regarding his alleged tie-up discrepancies.

83. Prior to this hearing, BNSF had not made the decision to terminate Miyler's

employment.

84. During this hearing, Miyler made complaints that this investigation was discriminatory.

85. BNSF terminated Miyler's employment 20 days later on January 30, 2023

86. Similarly situated employees were not disciplined for the same or worse rules violations than those accused of Plaintiff.

87. Similarly situated employees were not targeted by BNSF.

88. Defendant's reasons for terminating Plaintiff are either false or pretextual.

89. Plaintiff was actually terminated for one or more of the following reasons:

## COUNT I

### (Family Medical Leave Act - Interference)

90. Plaintiff restates and realleges paragraphs 1-89 of this Complaint.

91. The FMLA prohibits Defendant from interfering with, restraining, denying the exercise of or the attempt to exercise of any right provided under the FMLA.

92. At all relevant times, Plaintiff had one or more health conditions that from time to time made him unable to perform the functions of his job.

93. Defendant is an employer with 50 or more employees within 75 miles of Plaintiff's job location.

94. Plaintiff was an employee of Defendant for in excess of 12 months.

95. Plaintiff was an employee of Defendant who had worked at least 1,250 hours of service in the past 12 months.

96. Plaintiff was otherwise eligible for FMLA leave.

97. Defendant granted Plaintiff medical leave under the FMLA.

98. Defendant was aware that Plaintiff intended to continue to use FMLA.

99. Defendant, by and through its agents, among others, made comments that would lead a reasonable person to not take FMLA or otherwise utilize FMLA leave.

100. Among others, 29 C.F.R. § 825.220 (c) prohibits interference by "an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights…By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies."

101. Defendant interfered with Plaintiff's FMLA rights in violation of, among others, 29 C.F.R. § 825.220 (c) when it "use(d) the taking of FMLA leave as a negative factor in" the employment actions of terminating Plaintiff.

102. Defendant terminated plaintiff to, among others, prevent him from exercising FMLA rights in the future.

103. That as a result of the wrongful actions of Defendant, Plaintiff lost wages, salary, employment benefits, and/or other compensation.

WHEREFORE Plaintiff prays for Judgment against Defendant for lost wages, salary, employment benefits, and/or other compensation denied or lost; the interest on said damages calculated at the prevailing rate; liquidated damages prescribed by statute equal to the above damages; equitable relief as may be appropriate, including employment or reinstatement; reasonable attorney's fees, reasonable expert witness fees, and other costs of the action; and such other and further relief as the court deems just and appropriate.

## COUNT II

### (Family Medical Leave Act – Discrimination/Retaliation)

104. Plaintiff restates and realleges paragraphs 1-89 of this Complaint.

105. The FMLA prohibits discrimination and/or retaliation for exercising rights under the FMLA.

106. At all relevant times, Plaintiff had one or more health conditions that from time to time made him unable to perform the functions of his job.

107. Defendant is an employer with 50 or more employees within 75 miles of Plaintiff's job location.

108. Plaintiff was an employee of Defendant for in excess of 12 months.

109. Plaintiff was an employee of Defendant who had worked at least 1,250 hours of service in the past 12 months.

110. Plaintiff was otherwise eligible for FMLA leave.

111. Defendant granted Plaintiff medical leave under the FMLA.

112. Defendant was aware that Plaintiff intended to continue to use FMLA.

113. Plaintiff made complaints to Defendant about their treatment of him while on FMLA leave.

114. Defendant discriminated and/or retaliated against Plaintiff when it terminated Plaintiff for the taking of a leave granted to him pursuant to the Family and Medical Leave Act and/or in retaliation for making complaints about his FMLA leave.

115. Defendant's termination of Plaintiff was directly related to, or was caused by, Plaintiff's exercise of her rights under the FMLA.

116. That as a result of the wrongful actions of Defendant, Plaintiff lost wages, salary, employment benefits, and/or other compensation.

WHEREFORE Plaintiff prays for Judgment against the Defendant for lost wages, salary, employment benefits, and/or other compensation denied or lost; the interest on said damages calculated at the prevailing rate; liquidated damages prescribed by statute equal to the above damages; equitable relief as may be appropriate, including reinstatement; reasonable attorney's fees, reasonable expert witness fees, and other costs of the action; and such other and further relief as the court deems just and appropriate.

### COUNT III

### (ADA - Disability Discrimination)

117. Plaintiff restates and realleges paragraphs 1-89 of this Complaint.

118. Defendant is an entity engaged in an industry affecting commerce.

119. Defendant is an entity who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

120. At all relevant times, Plaintiff was an individual employed by Defendant.

121. Plaintiff has a physical impairment that substantially limited one or more major life activity.

122. Plaintiff has a physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, including but not limited to his neurological and/or respiratory systems.

123. Plaintiff's medical conditions affected major life activities including, but not limited to, caring for oneself, performing manual tasks, sleeping, concentrating, and working.

124. These major life activities were restricted more than most people in the general population.

125. Plaintiff has a 2+ year history of medical limitations that substantially limit major life activities.

126. Defendant regarded Plaintiff as having a disability.

127. Plaintiff was qualified to do the essential functions of his job.

128. Defendant was aware of Plaintiff's medical condition and limitations.

129. Defendant was aware that Plaintiff was taking off work related to his disability.

130. Defendant was aware that Plaintiff was making complaints related to Defendant's treatment of him related to his disability.

131. Plaintiff's disability was a motivating factor in Defendant's wrongful discriminatory treatment described and set forth above including, but not limited to Plaintiff's suspension and/or termination.

132. Defendant's actions were intentional with reckless indifference to Plaintiff's rights and sensibilities.

133. Defendant and its agents, representatives and employees treated Plaintiff differently than similarly situated employees.

134. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained injuries and damages. These include, but are not limited to: past and future wage loss; past and future lost earning capacity; loss of career opportunities; shame, humiliation, embarrassment, anxiety, loss of sleep and interference with his enjoyment of life; and emotional distress, all of which will continue into the future.

135. Defendant's actions were intentional, careless and/or reckless and performed in complete disregard of the law and the rights of Plaintiff, for which conduct and actions, punitive damages are properly imposed in such amounts as will punish Defendant for its wrongful conduct and deter it and others from like conduct in the future.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant and that Plaintiff be awarded past, present and future lost wages and benefits; compensatory damages, punitive and exemplary damages; interest, costs and reasonable attorneys' fees; equitable relief as may be appropriate, including reinstatement and removal of related discipline, any other relief afforded Plaintiff under the ADA and all other relief deemed just and equitable.

## COUNT IV

### (ADA - Failure to Accommodate)

136. Plaintiff restates and realleges paragraphs 1-89 of this Complaint.

137. Defendant is an entity engaged in an industry affecting commerce.

138. Defendant is an entity who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

139. At all relevant times, Plaintiff was an individual employed by Defendant.

140. Plaintiff has a physical impairment that substantially limited one or more major life activity.

141. Plaintiff has a physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, including but not limited to his neurological and/or respiratory systems.

142. Plaintiff's medical conditions affected major life activities including, but not limited to, caring for oneself, performing manual tasks, sleeping, concentrating, and working.

143. These major life activities were restricted more than most people in the general population.

144. Plaintiff was qualified to do the essential functions of his job.

145. Plaintiff was able to perform the essential functions of the job with or without reasonable accommodation.

146. Defendant was aware of Plaintiff's medical condition and limitations.

147. Instead of continuing to provide reasonable accommodations to Plaintiff, Defendant refused to engage in the interactive process and terminated Plaintiff's employment.

148. The accommodations were reasonable and were possible for Defendant to provide.

149. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized the discrimination against Plaintiff.

150. Defendant treated Plaintiff differently than similarly situated employees based on unlawful consideration of disability.

151. Plaintiff's disability was a motivating factor in Defendant's wrongful discriminatory treatment described and set forth above including, but not limited to Plaintiff's suspension and/or termination.

152. Defendant's actions were intentional with reckless indifference to Plaintiff's rights and sensibilities.

153. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained injuries and damages. These include, but are not limited to: past and future wage loss; past and future lost earning capacity; loss of career opportunities; shame, humiliation, embarrassment, anxiety, loss of sleep and interference with his enjoyment of life; and emotional distress, all of which will continue into the future.

154. Defendant's actions were intentional, careless and/or reckless and performed in complete disregard of the law and the rights of Plaintiff, for which conduct and actions, punitive damages are properly imposed in such amounts as will punish Defendant for its wrongful conduct and deter it and others from like conduct in the future.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant and that Plaintiff be awarded past, present and future lost wages and benefits; compensatory damages, punitive and exemplary damages; interest, costs and reasonable attorneys' fees; equitable relief as may be appropriate, including reinstatement and removal of related discipline, any other relief afforded Plaintiff under the ADA and all other relief deemed just and equitable.

## COUNT V

### (ADA – Retaliation)

155. Plaintiff restates and realleges paragraphs 1-89 of this Complaint.

156. Plaintiff's medical condition(s) are serious medical conditions that substantially limits one or more major life activity, Plaintiff had a history of a disability and/or Defendant perceived Plaintiff as having such a condition.

157. Plaintiff was qualified to perform the essential functions of the job with or without a reasonable accommodation.

158. Plaintiff requested reasonable accommodations of medical leave and the use of non-compliant footwear.

159. Plaintiff was subjected to tangible employment actions including, but not limited to, suspension and termination.

160. Plaintiff's requests for a reasonable accommodation and/or his complaints of discrimination were a motivating factor in the tangible employment actions including, but not limited to, suspension and termination.

161. Defendant treated Plaintiff differently than similarly situated employees based on unlawful consideration of disability.

162. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained injuries and damages. These include, but are not limited to: past and future wage loss; past and future lost earning capacity; loss of career opportunities; shame, humiliation, embarrassment, anxiety, loss of sleep and interference with his enjoyment of life; and emotional distress, all of which will continue into the future.

163. The actions of Defendant were intentional, careless and/or reckless and performed in complete disregard of the law and the rights of Plaintiff, for which conduct and actions, punitive damages are properly imposed in such amounts as will punish Defendant for its wrongful conduct and deter it and others from like conduct in the future.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant and that Plaintiff be awarded past, present and future lost wages and benefits; compensatory damages, punitive and exemplary damages; interest, costs and reasonable attorneys' fees; equitable relief as may be appropriate, including reinstatement and removal of related discipline, any other relief afforded Plaintiff under the ADA and all other relief deemed just and equitable.

## COUNT VI

### (Illinois Human Rights Act - Disability Discrimination)

164. Plaintiff restates and realleges paragraphs 117-135 of this Complaint.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant and that

Plaintiff be awarded past, present and future lost wages and benefits; compensatory damages; interest, costs and reasonable attorneys' fees; equitable relief as may be appropriate, including reinstatement and removal of related discipline, any other relief afforded Plaintiff under the Illinois Human Rights Act and all other relief deemed just and equitable.

## COUNT VII

### (Illinois Human Rights Act - Failure to Accommodate)

165. Plaintiff restates and realleges paragraphs 136-154 of this Complaint.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant and that Plaintiff be awarded past, present and future lost wages and benefits; compensatory damages; interest, costs and reasonable attorneys' fees; equitable relief as may be appropriate, including reinstatement and removal of related discipline, any other relief afforded Plaintiff under the Illinois Human Rights Act and all other relief deemed just and equitable.

## COUNT VIII

### (Illinois Human Rights Act – Retaliation)

166. Plaintiff restates and realleges paragraphs 155-163 of this Complaint.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant and that Plaintiff be awarded past, present and future lost wages and benefits; compensatory damages; interest, costs and reasonable attorneys' fees; equitable relief as may be appropriate, including reinstatement and removal of related discipline, any other relief afforded Plaintiff under the Illinois Human Rights Act and all other relief deemed just and equitable.

**THE FURNISS LAW FIRM, LLC**

  /s/ Ryan M. Furniss
Ryan M. Furniss IL #06282915
7750 Clayton Rd., Suite 102
Saint Louis, MO 63117
(314) 899-9101
(314) 627-5891 (fax)
rfurniss@furnisslaw.com